GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
By:     Jonathan E. Rebold
Assistant United States Attorney
One St. Andrew's Plaza
New York, New York 10007
Tel. (212) 637-2512

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------ x
:
UNITED STATES OF AMERICA            :
                                    :       **VERIFIED COMPLAINT**
                                    :       **FOR FORFEITURE**
                                    :
            v.                      :
                                    :
                                    :       18 Civ. 11182
                                    :
$55,486.00 IN UNITED STATES CURRENCY,:
                                    :
            Defendant-*in-rem*.     :
                                    :
------------------------------------ x

Plaintiff United States of America, by its attorney, Geoffrey S. Berman, United States Attorney for the Southern District of New York, for its verified complaint alleges, upon information and belief, as follows:

### JURISDICTION AND VENUE

1.      This is a civil action in rem is commenced by the United States of America pursuant to Title 18, United States Code, Section 981 seeking the forfeiture of $55,486.00 in United States currency seized on or about January 11, 2018 ("Defendant-*in-rem*" or "Defendant Currency").

2.      This Court has jurisdiction pursuant to Title 28, United States Code, Sections 1345 and 1355.

1

3. Venue is proper under Title 28, United States Code, Section 1355(b)(1)(A) because acts and omissions giving rise to forfeiture took place in the Southern District of New York.

## PROBABLE CAUSE FOR FORFEITURE

Background to the Investigation

4. Since around January 2018 the Drug Enforcement Administration ("DEA") has been involved in an investigation (the "Investigation") into a money laundering organization that launders narcotics proceeds on behalf of narcotics traffickers, and that operates in the Southern District of New York and elsewhere.

5. The Investigation revealed that members of the Organization were utilizing private airplanes to transport money and narcotics to avoid law enforcement detection.

6. A DEA source of information informed the DEA, in substance and in part, that a member of the Organization – a known money launderer in the San Francisco, California area – was in the process of collecting a large sum of narcotics proceeds from a particular location in New York, New York with the intention of then transporting those proceeds from New York to California utilizing a private airplane ("CC-1").

7. The instant complaint relates to the January 11, 2018 seizure by law enforcement of these proceeds, constituting approximately $55,486.00 in United States currency (i.e. the Defendant Currency).

The January 11, 2018 Seizure

8. On Thursday, January 11, 2018, members of a DEA task force (the "Task Force") established surveillance in the area of 250 West 50th Street, New York, New York.

9. At approximately 12:45 p.m., members of the Task Force observed a co-conspirator ("CC-1") exit the front door of 250 West 50th Street and proceed to an idling white 2016 Toyota RAV4 (the "Vehicle"). The driver of the Vehicle ("Individual-1"), exited the Vehicle and assisted CC-1 with placing CC-1's suitcase and carry-on luggage into the cargo area of the Vehicle. CC-1 carried a black leather backpack (the "Backpack") over CC-1's shoulder and entered the rear passenger seat of the Vehicle. Individual-1 entered the Vehicle and drove away from the area.

10. Members of the Task Force followed the Vehicle and at approximately 12:55 p.m., members of the Task Force initiated a motor vehicle stop of the Vehicle on 55th Street in Manhattan.

11. After approaching the Vehicle, members of the Task Force asked Individual-1's for his driver's license, registration and insurance card.

12. Thereafter, members of the Task Force requested that Individual-1 roll down the rear passenger window of the Vehicle and, upon complying, members of the Task Force observed CC-1 moving CC-1's hands quickly toward CC-1's feet what members of the Task Force believed to be a furtive movement.

13. At the request of members of the Task Force, CC-1 exit the Vehicle and then quickly adjusted an unknown white item inside of the Backpack.

14. Upon exiting the Vehicle, members of the Task Force detected an odor of burnt marijuana emanating from CC-1.

15. While outside of the Vehicle, members of the Task Force observed that CC-1 appeared extremely nervous and kept looking back at the Backpack on the rear floor of the Vehicle. When asked, CC-1 stated that CC-1's computer was in the Backpack, and that CC-1 did

not have any weapons, drugs or large amounts of currency in CC-1's possession or in the Backpack. CC-1 stated that, other than the Backpack, the Vehicle did not contain any property belonging to CC-1.

16. Individual-1 indicated to members of the Task Force that Individual-1 was an Uber driver and that Individual-1 was driving CC-1 to Westchester County Airport in White Plains, New York. Individual-1 stated that CC-1 brought two additional bags with CC-1, which were located in the trunk of the Vehicle.

17. Upon requesting identification from CC-1, CC-1 opened CC-1's Backpack allowing members of the Task Force to observe an open white paper bag which appeared to contain rolled up bundles of cash (United States currency). The bundles were sticking out of the Backpack, and held together by rubber bands, which, based on the Task Force members' training and experience, is consistent with the way in which narcotics proceeds are packaged. Based on the cash observed in plain view, members of the Task Force searched the Backpack and found a large quantity of cash in small denominations and a blue notebook which appeared to be used as a drug and money laundering ledger.[1]

18. Thereafter, CC-1 acknowledged that CC-1 had two additional bags in the trunk of the Vehicle. At first, CC-1 claimed that the bags only contained laundry; subsequently, CC-1 admitted that there was approximately twenty thousand dollars of additional cash (United States currency) in one of the bags.

---

[1] Based on the Task Force members' training and experience, it is common for individuals involved in both narcotics trafficking and money laundering of narcotics proceeds to move large quantities of cash bundled in small denominations, and to keep ledgers related to transactions involving narcotics and/or narcotics proceeds.

19. Members of the Task Force searched the bags in the trunk and found a squared-off black plastic bag, containing a large quantity of United States currency hidden at the bottom of a grey tote bag (the "Grey Bag").

20. The currency found in the Backpack and in the Grey Bag was aggregated and amounted to $55,486.00, i.e. the Defendant Currency.[2]

21. After seizing the Defendant Currency, a New York Police Department K-9 Detective was contacted and responded to the scene with "Mia," a canine trained to detect the presence of narcotics.[3] Mia gave a positive alert for the presence of narcotics on the Defendant Currency.

22. As a result of the above, law enforcement seized the Defendant Currency as narcotics proceeds.

## CLAIM FOR FORFEITURE

23. Incorporated herein are the allegations contained in paragraphs one through twenty-two of this Complaint.

24. Title 21, United States Code, Section 881(a)(6) subjects to forfeiture all "moneys, negotiable instruments, securities, or other things of value furnished or intended to be

---

[2] The Defendant Currency consisted of 146 hundred-dollar bills; 132 fifty-dollar bills, 1,658 twenty-dollar bills; 108 ten-dollar bills, 5 five-dollar bills, and 21 one-dollar bills. Narcotics traffickers are known to use low denomination currency to conduct their business and as such the Defendant Currency is consistent with being proceeds from narcotics trafficking.

[3] Mia is a certified as a narcotics detection canine after completing a New York State training course in the detection of the odors of marijuana, cocaine, crack, heroin, hashish, MDMA, suboxone and crystal methamphetamine on May 1, 2016. Since that time, Mia has received numerous hours of training and is utilized regularly for the purpose of detecting narcotic odors. Mia has been involved in search warrants and has made numerous positive identifications. Mia is routinely used to conduct searches of automobiles, residences, packages and suitcases. Mia has successfully given positive indications of narcotics in the field in the past and generally has proven reliable in the field..

5

furnished by any person in exchange for a controlled substance or listed chemical in violation of [Subchapter I of Title 21], all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of [Subchapter I of Title 21]."

25. The Defendant Currency is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because there is probable cause to believe that the Defendant Currency constitutes proceeds traceable to exchanges of controlled substances in violation of 21 U.S.C. §§ 841(a)(1) and 846.

WHEREFORE, plaintiff United States of America prays that process issue to enforce the forfeiture of the Defendant Currency and that all persons having an interest in the Defendant Currency be cited to appear and show cause why the forfeiture should not be decreed, and that this Court decree forfeiture of the Defendant Currency to the United States of America for disposition according to law, and that this Court grant plaintiff such further relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Dated: New York, New York
 November 30, 2018

                                          GEOFFREY S. BERMAN
                                          United States Attorney for the
                                          Southern District of New York
                                          Attorney for the Plaintiff
                                          United States of America

By: _____
           JONATHAN E. REBOLD
           Assistant United States Attorney
           One St. Andrew' Plaza
           New York, New York 10007
           Tel. (212) 637-2512

VERIFICATION

STATE OF NEW YORK              )
COUNTY OF NEW YORK             :
SOUTHERN DISTRICT OF NEW YORK  )

DARRAGH P. QUINN, being duly sworn, deposes and says that he is a "federal law enforcement officer" within the meaning of Rule 41(a)(2)(C) of the Federal Rules of Criminal Procedure, that is, a government agent engaged in enforcing criminal laws; that he has been deputized as a Task Force Officer by the Drug Enforcement Administration ("DEA"), and as such has responsibility for the within action; that he has read the foregoing complaint and knows the contents thereof, and that the same is true to the best of his own knowledge, information and belief.

The sources of deponent's information and the ground of his belief are conversations with other law enforcement officers and others, official records and files of DEA and the United States Government, and information obtained directly or indirectly by deponent during an investigation of alleged violations of Titles 18 and 21, United States Code.

Task Force Officer Darragh P. Quinn
Drug Enforcement Administration

Sworn to before me this
30th day of November, 2018

_____
NOTARY PUBLIC

KEVIN C. GORMAN
Notary Public, State of New York
No. 02GO6161201
Qualified in WESTCHESTER County
Commission Expires FEBRUARY 20, 2019

7